E-FILED
Monday, 16 March, 2026  03:30:26 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| CERTAINTEED LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:26-cv-02083 |
| ) | |
| STONE CREEK PRODUCTS, LLC, ) | **JURY TRIAL DEMANDED** |
| d/b/a AFFINITY STONE, ) | |
| ) | |
| Defendant. ) | |

## <u>COMPLAINT</u>

Plaintiff CertainTeed LLC ("CertainTeed" or "Plaintiff"), by and through its undersigned counsel, hereby brings this Complaint to protect CertainTeed's patented technologies from infringement by Stone Creek Products, LLC d/b/a Affinity Stone ("Affinity Stone" or "Defendant").

## <u>NATURE OF THE ACTION</u>

1. This is an action for patent infringement under the Patent Act, 35 U.S.C. § 271, arising from Affinity Stone's unauthorized manufacture, use, offer for sale, and sale of products that infringe CertainTeed's U.S. Patent Nos. 9,169,652, 11,047,134, and 11,828,071 (collectively, the "Asserted Patents"), which cover innovations related to manufactured building panels.

## <u>THE PARTIES</u>

2. CertainTeed is a Delaware limited liability company with a principal place of business at 20 Moores Road, Malvern, Pennsylvania 19355.

3. On information and belief, Affinity Stone is a limited liability company organized and existing under the laws of the State of Illinois with its principal place of business at 366 East State Road 133, Arthur, Illinois 61911.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq*.

5.      This Court has personal jurisdiction over Affinity Stone because Affinity Stone is an Illinois limited liability company with its principal place of business in this District.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1400(b) because Affinity Stone has committed acts of infringement and has a regular and established place of business in this District.

## BACKGROUND

### Introduction

7.      CertainTeed has helped shape the building products industry since the early 1900s and evolved into a leading brand of exterior and interior building products, which solve long-standing issues in the industry.

8.      CertainTeed's innovative work on exterior building products led to extensive development on manufactured siding panels, such as CertainTeed's STONEfaçade® panels, which combine the authentic appearance of natural stone with the performance of modern materials. CertainTeed's products solved specific deficiencies that existed in the prior art before CertainTeed's inventions.

9.      For example, CertainTeed addressed the need for durable, easy to install siding panels that prevented moisture (e.g., from precipitation) from becoming trapped between the mounting wall and the panels.  Traditionally, stone panels required labor-intensive installation methods. Prior manufacturers attempted to simplify the installation process; however, they

encountered significant technical challenges, including mold growth and water accumulation between the panel and the mounting wall, leading to deterioration of underlying building materials. Prior manufacturers also struggled to design panels that could be securely attached to a mounting wall using a simple yet durable fastening method.

10.     CertainTeed solved these problems and secured patent protection for its solutions in the Asserted Patents.  CertainTeed developed a manufactured, precast panel that mimicked the appearance of authentic wall siding while eliminating the installation difficulties associated with traditional materials and preventing moisture accumulation behind the panels.  The Asserted Patents describe a variety of benefits that CertainTeed's inventions provide, including but not limited to: a rainscreen(s) to prevent moisture from being trapped; a stand-off(s) that creates a physical gap between the mounting wall and the panel; a fastener hem for easy attachment to the mounting walls; and an insert.

11.     CertainTeed's inventions replicate the appearance and texture of external authentic sidings such as stone, while simultaneously providing the advantage of improved draining, durability, and ease of installation, leading to strong commercial success for CertainTeed's products.

12.     Without CertainTeed's authorization, Affinity Stone has been making, using, offering to sell, selling, and/or importing manufactured building panels covered by CertainTeed's patents, including Affinity Stone's Cliff Ledge Series and Ridge Cut Series rock wall panels, forcing CertainTeed to compete against its own technological breakthroughs.  Moreover, Affinity Stone partners with dealers to sell its products.  Affinity Stone's conduct in this regard is unjust and illegal because it violates the United States patent laws.  CertainTeed thus brings this Complaint to address Affinity Stone's infringement of CertainTeed's patents.

**CertainTeed's Asserted Patents**

13. To protect its investment and technological breakthroughs, CertainTeed applied for and was granted United States Patent Nos. 9,169,652 (the "'652 patent"), 11,047,134 (the "'134 patent"), and 11,828,071 (the "'071 patent").

14. On October 27, 2015, the United States Patent and Trademark Office ("USPTO"), after full and fair examination, duly and legally issued the '652 patent, which is titled "System, Method and Apparatus for Manufactured Building Panel." A true and correct copy of the '652 patent is attached as Exhibit 1.

15. The '652 patent claims patent-eligible subject matter and is valid and enforceable.

16. The '652 patent relates generally to a manufactured building panel with an insert, a portion of which is completely embedded in the body, with some stand-offs connected directly to each other inside the body but some stand-offs independent and detached from each other on the exterior of the body, a fastener hem, and a rainscreen.

17. CertainTeed holds all rights, title, and interest in the '652 patent, with full rights to enforce the same.

18. Affinity Stone does not have a license to the '652 patent, either expressly or implicitly, and does not enjoy or benefit from any rights in or to the '652 patent.

19. On June 29, 2021, the USPTO, after full and fair examination, duly and legally issued the '134 patent, which is titled "Manufactured Building Panel." A true and correct copy of the '134 patent is attached as Exhibit 2.

20. The '134 patent claims patent-eligible subject matter and is valid and enforceable.

21. The '134 patent relates generally to a panel with an insert having a fastener hem, at least one positioning stop, at least one stand-off, and an interior portion embedded within the body.

4

22. CertainTeed holds all rights, title, and interest in the '134 patent, with full rights to enforce the same.

23. Affinity Stone does not have a license to the '134 patent, either expressly or implicitly, and does not enjoy or benefit from any rights in or to the '134 patent.

24. On November 28, 2023, the USPTO, after full and fair examination, duly and legally issued the '071 patent, which is titled "Manufactured Building Panel Assembly."  A true and correct copy of the '071 patent is attached as Exhibit 3.

25. The '071 patent claims patent-eligible subject matter and is valid and enforceable.

26. The '071 patent relates generally to an assembly with two panels, one with a fastener hem with apertures, with each panel including an insert at least partially embedded and having at least one stand-off, and a rainscreen.

27. CertainTeed holds all rights, title, and interest in the '071 patent, with full rights to enforce the same.

28. Affinity Stone does not have a license to the '071 patent, either expressly or implicitly, and does not enjoy or benefit from any rights in or to the '071 patent.

29. CertainTeed's STONEfaçade® panels practice each of the Asserted Patents.

30. CertainTeed has marked the packaging of its STONEfaçade® panels with all three of the Asserted Patents since April 11, 2024, in accordance with 35 U.S.C. § 287.

**Affinity Stone's Infringing Products and Knowledge of the Asserted Patents**

31. Affinity Stone manufactures and sells stone veneer panels that directly compete with CertainTeed's STONEfaçade® panels.

32. Affinity Stone currently offers two versions of mortarless stone veneer panels: the Cliff Ledge Series and the Ridge Cut Series (hereafter, the "Accused Products").

5

33. On information and belief, Affinity Stone sells its products, including the Accused Products, in the United States primarily through authorized dealers. *See* Exhibit 4 (seeking dealers to distribute Affinity Stone products).

34. On its website, Affinity Stone markets that the Accused Products, like the Asserted Patents, contain an "integrated air gap behind the panels [which] helps prevent moisture from getting trapped in the wall space." *See* Exhibit 5.

35. In public demonstrations of its products, Affinity Stone describes the internal insert in the Accused Products as connecting the stand-offs through a system that "supports itself." *See* https://www.youtube.com/watch?v=XYBKg_v6CD0 at 11:00 (July 12, 2023). On information and belief, the panels shown in the YouTube video are the same as those that Affinity Stone currently sells and those in Affinity Stone's product catalogs. *See* Exhibits 6, 7, 9.

36. Further, like the Asserted Patents, the Accused Products allows for a "[s]imple installation with screws" through a "[f]astening [s]trip." *See* Exhibit 6, Affinity Stone 2024 Product Catalog, at 4.

37. Like the Asserted patents, the Accused Products feature a "[s]iding [which] interlocks with [a] precision-engineered tongue and groove system." *Id*.

38. Affinity Stone has known of the existence and materiality of the Asserted Patents since at least the date of filing this Complaint.

39. Additionally, Affinity Stone has had knowledge of the Asserted Patents since at least April 11, 2024, because the packaging of CertainTeed's STONEfaçade® panels is marked with the Asserted Patents pursuant to 35 U.S.C. § 287(a).

40. The Accused Products infringe the Asserted Patents either literally or under the doctrine of equivalents. Further, Affinity Stone's manufacture, use, sale, and/or offer for sale of

such products is damaging and will continue to damage CertainTeed, causing irreparable harm, for which there is no adequate remedy at law, unless Affinity Stone's wrongful acts are enjoined by this court.

## COUNT I

### Infringement of U.S. Patent No. 9,169,652

41.    CertainTeed repeats and realleges each of the preceding paragraphs as if fully set forth herein.

42.    Affinity Stone has directly and indirectly infringed, and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '652 patent, by making, using, offering to sell, and/or selling the Accused Products in the United States, in violation of 35 U.S.C. § 271.

43.    For example, claim 1 of the '652 patent recites:

A manufactured panel, comprising:

a body having a front, back, top, bottom and side walls, the side walls extend between the front and back, and an interior volume located between the front, back, top, bottom and side walls;

an insert having a planar interior portion embedded completely within the interior volume of the body,

and an exterior portion extending from the planar interior portion to an exterior of the body, the exterior portion comprises a fastener hem and a plurality of stand-offs protruding from the body, the fastener hem is spaced apart from the stand-offs and a back of the fastener hem and backs of the stand-offs define a co-planar surface,

7

at least some of the stand-offs are connected directly to each other inside the interior

volume of the body, and at least some of the stand-offs are independent and

detached from each other on the exterior of the body; and

the fastener hem and the stand-offs are configured to directly contact a mounting

wall to provide a rainscreen between the manufactured panel and the

mounting wall.

44. The Accused Products each include a body having a front, back, top, bottom, and side walls that extend between the front and back, and an interior volume located between the front, back, top, bottom, and side walls, as shown in the annotated photographs of a representative Affinity Stone panel below:





Side wall

45.     The Accused Products each include an insert having a planar interior portion embedded completely within the interior volume of the body, as shown in the annotated photograph of a representative Affinity Stone panel below:



Insert

46.     The Accused Products each include an exterior portion extending from the planar interior portion to an exterior of the body and the exterior portion comprises a fastener hem and a plurality of stand-offs protruding from the body, with the fastener hem being spaced apart from the stand-offs, as shown in the annotated photograph of a representative Affinity Stone panel below:



47.     The back of the fastener hem and the backs of the stand-offs of the Accused Products define a coplanar surface, as shown in an annotated image of a representative Affinity Stone panel from Affinity Stone's 2025 Technical Product Catalog, attached as Exhibit 7, below:



*See* Exhibit 7 at 2-5.

48.     Affinity Stone's public presentations of its product demonstrate that the fastener hem and the stand-off define a coplanar surface, as shown in the still image from a video hosted on Affinity Stone's YouTube channel below:



*See* https://www.youtube.com/watch?v=uTORxL_7BgQ at 2:20 (December 23, 2021). On information and belief, the panels shown in the YouTube video are the same as those that Affinity Stone currently sells and those in Affinity Stone's product catalogs. *See* Exhibits 6, 7, 9.

49. The Accused Products each include at least some stand-offs that are connected directly to each other inside the interior volume of the body and at least some stand-offs that are independent and detached from each other on the exterior of the body, as shown in the annotated photograph of a representative Affinity Stone panel below:



50. The Accused Products are configured to have the fastener hem, and the stand-offs directly contact a mounting wall to provide a rainscreen between the manufactured panel and the

mounting wall, as shown in the annotated images of a representative Affinity Stone panel from

Affinity Stone's Product Catalog and Technical Product Catalog below:



*See* Exhibit 6 at 4.



*See* Exhibit 7 at 2-5.

51.    On its public website for frequently asked questions, attached as Exhibit 8, Affinity

Stone advertises that the Accused Product's design creates a rainscreen:

12

> **6. Do you need to install a weatherproof barrier behind our veneer?**
>
> Every piece of Affinity manufactured stone is crafted with a half-inch rain screen, which allows any water that would get behind it to drain out the bottom. That's why you only need a single layer of vapor barrier and you'll be good!

> **7. Is any sealing needed between the panels?**
>
> No sealing of any kind is needed — thanks to our built-in rain screen. This is another way that our innovations make putting up our stone veneer easy and headache-free.

*See* Exhibit 8 at 4.

52.    As described in the preceding paragraphs, the Accused Products meet each limitation of at least claim 1 of the '652 patent.  Thus, by making, using, selling, offering to sell, and/or importing the Accused Products, Affinity Stone has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '652 patent, in violation of 35 U.S.C. § 271.

53.    Affinity Stone publishes and provides instructional manuals, brochures, and instructional videos to partners and customers, thereby inducing others to directly infringe the '652 patent through the installation, use, and/or operation of the Accused Products.  *See, e.g.*, Exhibits 6, 7, 9.

54.    Affinity Stone has induced and continues to induce others to infringe, literally or under the doctrine of equivalents, one or more claims of the '652 patent under 35 U.S.C. § 271(b) by knowingly, intentionally, and actively aiding and abetting others to infringe the '652 patent, and with the specific intent that such others infringe the '652 patent.

55.    Affinity Stone sells the components of its Accused Products through authorized dealers and to customers, knowing that such components are especially made or adapted for use

in an infringement of the '652 patent and not suitable for any substantial non-infringing use, thereby contributing to the infringement of the '652 patent.

56. Affinity Stone has contributed, and continues to contribute, to the infringement, literally or under the doctrine of equivalents, of one or more claims of the '652 patent under 35 U.S.C. § 271(c), by making, using, offering to sell, and/or selling one or more components of the Accused Products in the United States, knowing such components to be especially made or adapted for use in an infringement of the '652 patent and not suitable for any substantial non-infringing use.

57. As a direct and proximate result of Affinity Stone's direct and indirect infringement, CertainTeed has suffered and continues to suffer damages.

58. CertainTeed is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining Affinity Stone from infringing the '652 patent.

59. Because Affinity Stone has been aware of at least one valid and enforceable claim of the '652 patent since at least as early as April 11, 2024 (when CertainTeed marked the packaging for its STONEfaçade® panels), and no later than the filing of this Complaint, Affinity Stone's continued direct and indirect infringement has been willful, knowing, intentional, and deliberate. Thus, CertainTeed is entitled to recover enhanced damages in addition to damages in an amount subject to proof at trial, including but not limited to damages for convoyed sales relating to the Accused Products pursuant to 35 U.S.C. § 284 and recovery of attorneys' fees and costs pursuant to 35 U.S.C. § 285.

14

## COUNT II

### Infringement of U.S. Patent No. 11,047,134

60.     CertainTeed repeats and realleges each of the preceding paragraphs as if fully set forth herein.

61.     Affinity Stone has directly and indirectly infringed, and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '134 patent, by making, using, offering to sell, and/or selling the Accused Products in the United States, in violation of 35 U.S.C. § 271.

62.     Claim 1 of the '134 patent recites:

A panel, comprising:

a body;

and an insert having an interior portion embedded within the body, at least one standoff extending from the interior portion and protruding from a back of the body, and an exterior portion extending from the body and comprising a fastener hem and at least one positioning stop coupled to the interior portion, wherein a back of the at least one standoff and a back of the fastener hem are substantially coplanar.

63.     The Accused Products each include a body and an insert having an interior portion embedded within the body, at least one standoff extending from the interior portion and protruding from a back of the body, as shown in the annotated photographs of a representative Affinity Stone panel below:

15



Standoffs protruding from body

Insert with interior portion embedded within the body

64.     The Accused Products each include an insert having an exterior portion extending from the body and comprising a fastener hem and at least one positioning stop coupled to the interior portion, wherein a back of the at least one standoff and a back of the fastener hem are substantially coplanar, as shown in the annotated photograph and an image from Affinity Stone's Technical Product Catalog of a representative Affinity Stone panel below:



Fastener hem and at least one positioning stop

Insert with interior portion embedded within the body



*See* Exhibit 7 at 2-5.

65.     Affinity Stone's public presentations of its product demonstrate that the hem and the stand-off define a coplanar surface, as shown in the still image from a video hosted on Affinity Stone's YouTube channel below:



*See* https://www.youtube.com/watch?v=uTORxL_7BgQ at 2:20 (December 23, 2021). On information and belief, the panels shown in the YouTube video are the same as those that Affinity Stone currently sells and those in Affinity Stone's product catalogs. *See* Exhibits 6, 7, 9.

66.   As described in the preceding paragraphs, the Accused Products meet each limitation of at least claim 1 of the '134 patent. Thus, by making, using, selling, offering to sell, and/or importing the Accused Products, Affinity Stone has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '134 patent, in violation of 35 U.S.C. § 271.

67.   Affinity Stone publishes and provides instructional manuals, brochures, and instructional videos to partners and customers, thereby inducing others to directly infringe the '134 patent through the installation, use, and/or operation of the Accused Products. *See, e.g.*, Exhibits 6, 7, 9.

68.   Affinity Stone has induced and continues to induce others to infringe, literally or under the doctrine of equivalents, one or more claims of the '134 patent under 35 U.S.C. § 271(b) by knowingly, intentionally, and actively aiding and abetting others to infringe the '134 patent, and with the specific intent that such others infringe the '134 patent.

69.   Affinity Stone sells the components of its Accused Products through authorized dealers and to customers, knowing that such components are especially made or adapted for use in an infringement of the '134 patent and not suitable for any substantial non-infringing use, thereby contributing to the infringement of the '134 patent.

70.   Affinity Stone has contributed, and continues to contribute, to the infringement, literally or under the doctrine of equivalents, of one or more claims of the '134 patent under 35 U.S.C. § 271(c), by making, using, offering to sell, and/or selling one or more components of the

Accused Products in the United States, knowing such components to be especially made or adapted for use in an infringement of the '134 patent and not suitable for any substantial non-infringing use.

71. As a direct and proximate result of Affinity Stone's direct and indirect infringement, CertainTeed has suffered and continues to suffer damages.

72. CertainTeed is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining Affinity Stone from infringing the '134 patent. Because Affinity Stone has been aware of at least one valid and enforceable claim of the '134 patent since at least as early as April 11, 2024 (when CertainTeed marked the packaging for its STONEfaçade® panels), and no later than the filing of this Complaint, Affinity Stone's continued infringement has been willful, knowing, intentional, and deliberate. Thus, CertainTeed is entitled to recover enhanced damages in addition to damages in an amount subject to proof at trial, including but not limited to damages for convoyed sales relating to the Accused Products pursuant to 35 U.S.C. § 284 and recovery of attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## COUNT III

### Infringement of U.S. Patent No. 11,828,071

73. CertainTeed repeats and realleges each of the preceding paragraphs as if fully set forth herein.

74. Affinity Stone has directly and indirectly infringed, and continues to infringe, literally or under the doctrine of equivalents, one or more claims of the '071 patent, by making, using, offering to sell, and/or selling the Accused Products in the United States, in violation of 35 U.S.C. § 271.

75. Claim 1 of the '071 patent recites:

19

A panel, comprising:

a first panel comprising a body and an insert at least partially embedded within the body, wherein the insert of the first panel comprises at least one standoff protruding out from a back of the body, and a fastener hem coupled to the interior portion of the insert of the first panel, and wherein the fastener hem comprises a plurality of apertures; and

a second panel comprising a body and an insert at least partially embedded within the body, wherein the insert of the second panel comprises at least one standoff protruding out from a back of the body;

wherein the at least one standoff of the first panel and the at least one standoff of the second panel are substantially coplanar and configured to directly contact a mounting wall to provide a rainscreen for the panel assembly.

76. The Accused Products each include a first panel comprising a body and an insert at least partially embedded within the body, wherein the insert of the first panel comprises at least one standoff protruding out from a back of the body, and a fastener hem coupled to the interior portion of the insert of the first panel, and wherein the fastener hem comprises a plurality of apertures, as shown in the annotated image from Affinity Stone's Product Catalog and a photograph of a representative Affinity Stone panel below:



Standoff protruding from back of body

*See* Exhibit 6 at 4.



Fastener hem

Plurality of apertures

Insert partially embedded within the body

77.     The Accused Products each include a second panel comprising a body and an insert at least partially embedded within the body, wherein the insert of the second panel comprises at least one standoff protruding out from a back of the body, as shown in Affinity Stone's Installation Guide, attached here as Exhibit 9, an annotated image, and an image from Affinity Stone's Technical Product Catalog below:



First panel

Second panel

*See* Exhibit 9 at 8.



Insert at least partially embedded within the body

At least one standoff



At least one standoff

*See* Exhibit 7 at 2-5.

78. The Accused Products are configured wherein the at least one standoff of the first panel and the at least one standoff of the second panel are substantially coplanar and configured to directly contact a mounting wall to provide a rainscreen for the panel assembly, as shown in the annotated photographs of a representative Affinity Stone panel below:



Rainscreen for the panel assembly

*See* https://www.youtube.com/watch?v=_4fwrub3uGw at 6:37 (June 4, 2024). On information and belief, the panels shown in the YouTube video are the same as those that Affinity Stone currently sells and those in Affinity Stone's product catalogs. *See* Exhibits 6, 7, 9.

79. As described in the preceding paragraphs, the Accused Products meet each limitation of at least claim 1 of the '071 patent. Thus, by making, using, selling, offering to sell, and/or importing the Accused Products, Affinity Stone has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '071 patent, in violation of 35 U.S.C. § 271.

80. Affinity Stone publishes and provides instructional manuals, brochures, and instructional videos to partners and customers, thereby inducing others to directly infringe the '071 patent through the installation, use, and/or operation of the Accused Products. *See, e.g.*, Exhibits 6, 7, 9.

81. Affinity Stone has induced and continues to induce others to infringe, literally or under the doctrine of equivalents, one or more claims of the '071 patent under 35 U.S.C. § 271(b) by knowingly, intentionally, and actively aiding and abetting others to infringe the '071 patent, and with the specific intent that such others infringe the '071 patent.

82. Affinity Stone sells the components of its Accused Products through authorized dealers and to customers, knowing that such components are especially made or adapted for use in an infringement of the '071 patent and not suitable for any substantial non-infringing use, thereby contributing to the infringement of the '071 patent.

83. Affinity Stone has contributed, and continues to contribute, to the infringement, literally or under the doctrine of equivalents, of one or more claims of the '071 patent under 35 U.S.C. § 271(c), by making, using, offering to sell, and/or selling one or more components of the

Accused Products in the United States, knowing such components to be especially made or adapted for use in an infringement of the '071 patent and not suitable for any substantial non-infringing use.

84. As a direct and proximate result of Affinity Stone's direct and indirect infringement, CertainTeed has suffered and continues to suffer damages.

85. CertainTeed is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining Affinity Stone from infringing the '071 patent.

86. Because Affinity Stone has been aware of at least one valid and enforceable claim of the '071 patent since at least as early as April 11, 2024 (when CertainTeed marked the packaging for its STONEfaçade® panels), and no later than the filing of this Complaint, Affinity Stone's continued infringement has been willful, knowing, intentional, and deliberate. Thus, CertainTeed is entitled to recover enhanced damages in addition to damages in an amount subject to proof at trial, including but not limited to damages for convoyed sales relating to the Accused Products pursuant to 35 U.S.C. § 284 and recovery of attorneys' fees and costs pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, CertainTeed respectfully requests that this Court enter judgment against Affinity Stone as follows:

A.    Finding that Affinity Stone has directly and indirectly infringed the '652 patent;

B.    Finding that Affinity Stone has directly and indirectly infringed the '134 patent;

C.    Finding that Affinity Stone has directly and indirectly infringed the '071 patent;

D.    Finding that Affinity Stone's direct and indirect infringement of the '652, '134, and '071 patents has been willful;

E.    Preliminarily and permanently enjoining Affinity Stone and its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, be preliminarily and permanently enjoined from further acts of infringement;

F.    Awarding CertainTeed damages adequate to compensate for Affinity Stone's infringement pursuant to 35 U.S.C. § 284;

G.    Awarding CertainTeed treble damages for Affinity Stone's willful infringement, pursuant to 35 U.S.C. § 284;

H.    Awarding CertainTeed pre-judgment and post-judgment interest;

I.    Awarding CertainTeed supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction and/or entry of final judgment;

J.    Awarding CertainTeed its attorneys' fees based on this being an exceptional case pursuant to 35 U.S.C. § 285, including pre-judgment interest on such fees;

K.    Awarding CertainTeed its costs and expenses in this action; and

L.    Awarding such other and further relief as the Court deems just and/or proper.

## <u>DEMAND FOR JURY TRIAL</u>

CertainTeed respectfully demands a trial by jury on all issues triable to a jury.

CERTAINTEED LLC


LATHAM & WATKINS LLP

Matthew J. Moore (application forthcoming)
Ashley M. Fry (application forthcoming)
Drew W. Roberts (application forthcoming)
Mary Adeyemi (application forthcoming)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
matthew.moore@lw.com
ashley.fry@lw.com
drew.roberts@lw.com
*Lead Counsel for Plaintiff CertainTeed LLC*


By:          /s/ John P. Heil, Jr.
HEYL, ROYSTER, VOELKER & ALLEN, P.C.

John P. Heil, Jr., IL ARDC #6237286
Samuel J. Perkins, IL ARDC #6211028
300 Hamilton Boulevard, P.O. Box 6199
Peoria, IL 61602
Telephone: (309) 676-0400
peoecf@heylroyster.com
jheil@heylroyster.com
sperkins@heylroyster.com
*Local Counsel for Plaintiff CertainTeed LLC*